UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS SIDES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:05-CV-1000-G |
| STEPHEN L. ST. CLAIR and | ) | |
| JAMES JABLON, | ) | **ECF** |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a civil rights case. The plaintiff, Thomas Sides ("the plaintiff" or "Sides"), alleges that the defendants, Stephen L. St. Clair ("St. Clair") and James Jablon ("Jablon") (collectively, "the defendants"), violated his civil rights by using excessive force during his arrest and by denying him reasonable and necessary medical care following his arrest. A bench trial on these issues was conducted on January 10, 2007. Pursuant to Federal Rule of Civil Procedure 52, the court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

1. The events at issue in this case took place during the early morning hours of January 24, 2004. Transcript of Trial, Volume 1 ("Transcript") at 25:22-25.

2. The plaintiff was high on methamphetamine at the time the relevant events took place. Transcript at 9:17-18, 14:14-19.

3. The plaintiff did not take his "psych drugs" before the relevant events took place. Transcript at 10:7-8.

4. The fact that the plaintiff was high on methamphetamine, that he had not taken his psych drugs, or a combination of both impaired the plaintiff's perception and caused him to start "freaking out." Transcript at 10:8-9.

5. When he was arrested, the plaintiff had a bottle of nitroglycerin pills in his pocket that he used to treat a heart condition. Transcript at 10:22-23, 69:23-70:11.

6. The plaintiff has been convicted of robbery within the last ten years. Transcript at 15:15-19.

7. The plaintiff's nitroglycerin was in an unmarked medical container. Transcript at 17:13-17.

8. At the time the relevant events took place, St. Clair and Jablon were serving as Dallas police officers. Transcript at 25:18-21, 53:11-16.

9. On the night in question, St. Clair conducted a traffic stop of the vehicle the plaintiff was driving. Transcript at 27:7-10.

10. St. Clair approached the vehicle and obtained identification from the plaintiff and a passenger, then returned to his police car to conduct an identification check. Transcript at 27:14-18.

11. Because St. Clair thought the plaintiff appeared "to be very nervous," he requested assistance from other officers. Transcript at 27:19-28:5.

12. The "subject search" on Sides revealed a warrant for his arrest for a parole violation. Transcript at 28:11-16.

13. After confirming the warrant, St. Clair approached the plaintiff's vehicle together with the backup police officers who had arrived at the scene -- Jablon and another officer. Transcript at 28:22-29:2.

14. As the officers neared the vehicle, the passenger exited the vehicle and the plaintiff began to drive away. Transcript at 29:4-6, 55:13-17.

15. When the plaintiff began to drive away, the defendants went back to their vehicles and a high speed chase ensued. Transcript at 29:17-19, 29:24-30:2, 55:18-19.

16. The high speed pursuit ended in an industrial area of Seagoville when the plaintiff's vehicle began having mechanical difficulties. Transcript at 30:7-8, 30:12-19, 58:23-59:1.

17. After the vehicle pursuit ended, Sides exited his vehicle and began running from the defendants. Transcript at 30:19, 59:1-3.

18. St. Clair and Jablon pursued Sides on foot. Transcript at 30:22-24, 59:2-3.

19. While running from the defendants, Sides tripped and fell multiple times. Transcript at 32:7-11, 60:5-7.

20. When the defendants caught up to the plaintiff, Sides resisted arrest and kicked Jablon multiple times. Transcript at 60:8-14, 61:5-6.

21. In order to get Sides under control, Jablon struck him on the side of the neck with his flashlight -- "a soft weapon." Transcript at 61:3-5.

22. St. Clair did not strike the plaintiff with any weapons while making the arrest. Transcript at 32:19-21.

23. After Sides was handcuffed and searched, he walked with the defendants to St. Clair's police vehicle and got inside without further resistance. Transcript at 33:16-22, 61:7-12.

24. At this time, Sides did not exhibit any symptoms of having a serious injury or condition that would require medical treatment. Transcript at 34:16-19, 61:13-62:2.

25. Once Sides was secured in St. Clair's vehicle, Jablon went to his own vehicle and proceeded with the rest of his shift. Transcript at 62:12-13.

26.     St. Clair searched and secured the vehicle Sides had been driving, and then drove Sides to the jail.  Transcript at 34:1-4.

27.     When St. Clair and Sides arrived at the jail, Sides told St. Clair he had a head injury.  Transcript at 34:5-11.

28.     St. Clair took Sides to see the nurse on duty at the jail.  Transcript at 35:10-15.

29.     After examining the plaintiff, the nurse told St. Clair to take Sides to Parkland Hospital for further evaluation.  Transcript at 36:13-15.

30.     Upon arriving at Parkland Hospital, St. Clair and another police officer took Sides into the hospital where he was placed on a bed and handcuffed to prevent him from trying to escape.  Transcript at 36:23-25.

31.     While Sides was being evaluated, St. Clair called the police station to get relief officers to come watch Sides, because he and the other officer were preparing to complete their shift.  Transcript at 37:14-16.

32.     When the relief officers arrived, St. Clair and the other officer left the hospital, which ended their immediate involvement in the case.  Transcript at 38:3-12.

## II.  CONCLUSIONS OF LAW

To prevail on his Section 1983 claims against the defendants, Sides must prove by a preponderance of the evidence (1) that St. Clair and Jablon were acting under

color of state law; (2) that St. Clair and Jablon intentionally committed acts that violated one or more of Sides's federal constitutional rights; and (3) that St. Clair's and Jablon's acts were the legal cause of Sides's damages. *See* 42 U.S.C. § 1983. Because St. Clair and Jablon were acting in their capacities as Dallas police officers when the relevant events occurred, the court concludes that they were acting under color of state law. Next, the court must address the issue of whether the defendants intentionally violated the plaintiff's constitutional rights.

### A. Use of Excessive Force

United States citizens are protected against the use of excessive force by the Fourth Amendment to the Constitution. Because the defendants have offered the defense of qualified immunity, Sides must prove by a preponderance of the evidence that he suffered "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Sides claims that the defendants injured him in several ways while placing him under arrest: (1) they hit him on the head, butt, and back with a billy club; (2) they slammed him down on the hood of a car; (3) one of the defendants pulled up on his thumb to make him squeal; and (4) St. Clair ground his toes into the street after his shoes came off. Transcript at 10:20-22, 11:3-6. The plaintiff also avers that while he was at the hospital, the defendants slammed him down, slapped him to wake him up,

and jumped on top of him and started beating him again. Transcript at 11:20-22, 11:25-12:1, 12:5-6. As a result of the defendants' conduct, Sides contends, his chest and head hurt, he had bruises all over his chest, he could not stand because his leg was injured, his brain was swollen, he could not hold his bowels, and he had problems with his memory. Transcript at 10:23-24, 11:19, 12:3-11.

The only evidence Sides presented to prove these actions and injuries was his own testimony. Because Sides was mentally impaired and "freaking out" during the time that the relevant events allegedly occurred, the court does not find his testimony regarding these events to be reliable. *See* Finding 4, *supra*. Although Jablon admitted striking the plaintiff on the neck with his flashlight, this force was neither excessive nor unreasonable considering the plaintiff's attempts to resist arrest, including repeatedly kicking Jablon. *See* Findings 20-21. Therefore, the court concludes that Sides has not met his burden of establishing that the defendants violated his constitutional right to be free from the use excessive force during his arrest.

B. <u>Denial of Medical Treatment</u>

Persons in custody are protected by the Fourteenth Amendment from having their serious medical needs met with deliberate indifference. To succeed on his claim for denial of medical care, Sides must prove by a preponderance of the evidence that St. Clair or Jablon acted "with deliberate indifference to a substantial risk of serious medical harm and resulting injuries." *Mace v. City of Palestine*, 333 F.3d 621, 625

(5th Cir. 2003). "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm" through his inaction. *Id.* at 626.

Sides argues that immediately after his arrest, he informed the defendants that his chest and head were hurting. Transcript at 10:23-24. Rather than take him to the hospital, Sides maintains, the defendants ignored his complaints and threw away his unmarked container of heart medication because they said he was going to die anyway. Transcript at 11:13-19. Sides also contends that he passed out after he was placed in the back of the police vehicle and that he woke up in the presence of a doctor and a nurse. 11:19-23.

As with his claims regarding excessive force, the only evidence presented by Sides to support his claim for denial of medical care is his own testimony. Because Sides was mentally impaired and "freaking out" during the time that the relevant events allegedly occurred, the court does not find his testimony regarding these events to be reliable. *See* Finding 4. At the time of his arrest, Sides did not exhibit any signs of having a serious injury or medical condition that would require immediate treatment. *See* Finding 24. Moreover upon arrival at the jail, when Sides informed St. Clair that he had a head injury, St. Clair took the plaintiff to see a nurse. *See* Findings 27-28. Consequently, the court concludes that Sides has not shown the

defendants acted with deliberate indifference to any substantial risk that Sides was suffering from a serious medical condition or injury.

## III.  CONCLUSION

Because Sides has not proven by a preponderance of the evidence that the defendants violated his constitutional rights, he has not satisfied the second element of his Section 1983 cause of action.  Accordingly, judgment will be entered that Sides take nothing from the defendants on his claims in this case.

**SO ORDERED**.

January 24, 2007.

_____
A. JOE FISH
CHIEF JUDGE